UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. C 09-00862 MHP |
| v. | **MEMORANDUM & ORDER** |
| DONALD DANIELS, MARTIN WILLIAM WASHBURN, TAPANI KOIVUNEN, IRINA REBEGENEAU, and SERGEI VLADMIROVICH SHKURKIN | **Re: Defendants Daniels, Washburn and Koivunen's Motion to Dismiss Counts 5 through 9 of the Superseding Indictment** |
| Defendants. / | |

On August 27, 2009, a grand jury in the Northern District of California indicted defendants Donald Daniels ("Daniels"), Martin William Washburn ("Washburn"), Tapani Koivunen ("Koivunen") and Irina Rebegeneau ("Rebegeneau") on charges of committing and conspiring to commit mail fraud, wire fraud and money laundering. On October 1, 2009, the grand jury returned a superseding indictment which realleged the same charges against the above-mentioned defendants, joined Sergei Shkurkin ("Shkurkin") as an additional defendant and added charges of extortion against Daniels, Washburn and Shkurkin. Daniels, joined by Washburn and Koivunen, now moves to dismiss counts 5 through 9 of the superseding indictment as barred by the statute of limitations. Having considered the parties' submissions, and for the reasons discussed below, the court enters the following memorandum and order.

BACKGROUND

Daniels, Washburn and Koivunen were indicted on counts 5 through 9 for conduct that occurred in late-2003. Docket No. 25 (Superseding Indictment) ¶¶ 18-23. Counts 5 and 6 of the superseding indictment charge Daniels with violating 18 U.S.C. section 1343 by committing substantive wire fraud for uses of the wires that occurred on November 3, 2003, and November 11, 2003. Superseding Indictment ¶¶ 18-19. Count 7 charges Daniels, Washburn and Koivunen with violating 18 U.S.C. section 1956(h) by conspiring to commit money laundering from June 2003 to December 2003. *Id.* ¶¶ 20-21. Counts 8 and 9 charge Daniels, Washburn and Koivunen with violating 18 U.S.C. section 1956(a)(2)(A) by committing substantive money laundering specified in counts 5 and 6. *Id.* ¶¶ 22-23.

As none of these statutes have specified statutes of limitations, all of these statutes are subject to the default five-year statute of limitations for non-capital federal offenses. 18 U.S.C. § 3282. Therefore, the statute of limitations was set to run with respect to counts 5 and 8 on November 3, 2008; with respect to counts 6 and 9 on November 11, 2008; and with respect to count 7 on December 31, 2008.

18 U.S.C. section 3292 allows a district court presiding over a grand jury to suspend the running of a statute of limitations in order to give a prosecutor time to acquire evidence from a foreign country. It states in relevant part:

> Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

18 U.S.C. § 3292(a)(1). The suspension period "shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request." *Id.* § 3292(b). However:

> The total of all periods of suspension . . . with respect to an offense--
>
> (1) shall not exceed three years; and

2

     (2) shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

*Id.* § 3292(c).

On April 2, 2008, the United States submitted a letter rogatory, which is a type of official request under section 3292(d)[1], to the Finnish government, seeking evidence relevant to the conduct upon which Counts 5 through 9 are based. Docket No. 116 (McNamara Dec.), Exh. D (Letter rogatory). On September 22, 2008, the United States submitted an application to the court presiding over the grand jury, requesting suspension of the statute of limitations pursuant to section 3292. McNamara Dec., Exh. C (Application for suspension). That same day, the court granted the government's application, and issued an order suspending the running of the statute of limitations from April 2, 2008 (the date when the letter rogatory was submitted) until the Finnish government should take final action. McNamara Dec., Exh. E (Order suspending statute). The Finnish government took final action in response to this letter rogatory on October 15, 2008. McNamara Dec., Exh. F (Letter from the Finnish Ministry of Justice). As the Finnish government took final action more than six months after the official request but before the statute of limitations would otherwise have expired (in November 2008), the court's section 3292 order only suspended the statute of limitations for six months.[2] 18 U.S.C. 3292(c)(2). Thus, after this first section 3292 order issued, the statute of limitations was set to expire with respect to counts 5 and 8 on May 5, 2009; with respect to counts 6 and 9, on May 13, 2009; and with respect to count 7, on July 2, 2009.[3]

On April 6, 2009, the United States submitted an official request to Estonia, under the Mutual Legal Assistance Treaty ("MLAT"), for further assistance in investigating the defendants' activities. McNamara Dec., Exh. H (MLAT request). This was thirty days before the statute of limitations for any of the counts was set to expire. On July 29, 2009, the government applied to the court for a second suspension of the statute of limitations under section 3292, based on its request to Estonia. McNamara Dec., Exh. G (Second application for suspension). This application was filed twenty-seven days after the statute of limitations would have expired for all of the counts. The court issued a second section 3292 order on the same day. McNamara Dec., Exh. I (Second order granting

3

suspension). The Estonian government took final action in response to the MLAT request on August 21, 2009. McNamara Dec., Exh. J (Letter from the Estonian Ministry of Justice). Therefore, if the second suspension of the statute of limitations was valid, the statutory period expired with respect to counts 5 and 8 on September 20, 2009; with respect to counts 6 and 9, on September 28, 2009; and with respect to count 7, on November 9, 2009. As the indictment was returned on August 27, the indictment was filed within the statute of limitations only if the second section 3292 order is valid.[4]

LEGAL STANDARD

Under Rule 12(b) of the Federal Rules of Criminal Procedure, a party may file a motion to dismiss based on "any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b); *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). In considering a motion to dismiss, the court is limited to the face of the indictment and must accept the facts alleged in the indictment as true. *Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1955); *United States v. Ruiz-Castro*, 125 F. Supp. 2d 411, 413 (D. Haw. 2000). A court must decide such a motion before trial "unless it finds good cause to defer a ruling." Fed. R. Crim. P. 12(d); *Shortt Accountancy*, 785 F.2d at 1452 (citing former Fed. R. Crim. P. 12(e)). On a motion to dismiss an indictment as barred by the statute of limitations, the government bears the burden of showing by a preponderance of the evidence that the charges are timely. *Grunewald v. United States*, 353 U.S. 391, 396 (1957); *United States v. Gonsalves*, 675 F.2d 1050, 1054 (9th Cir. 1982) (holding that the "preponderance of the evidence" standard applied where the government sought to prove that a statute of limitations had been validly tolled).

DISCUSSION

Defendants make two arguments in support of their motion to dismiss counts 5 through 9. Firstly, they argue that section 3292 does not permit the court to retroactively suspend the statute of limitations when the government submits an application for a section 3292 order after the statute of

4

limitations would otherwise have expired, even if an official request was sent prior to the expiration of the statute of limitations. For this contention, defendants rely heavily on *United States v. Kozeny*, 541 F.3d 166 (2d Cir. 2008), which directly supports their interpretation of the statute. They further argue that the Ninth Circuit's decision in *United States v. Bischel*, 61 F.3d 1429 (9th Cir. 1995), does not foreclose this interpretation. Secondly, defendants contend that it violates the Ex Post Facto and Due Process Clauses to issue a section 3292 order after the statutory period expires. The court addresses each argument in turn.

I.     The Second Circuit's Interpretation of Section 3292

Defendants first contend that section 3292(a)(1) does not permit the government to apply for a section 3292 order, and does not permit the court to issue such an order, once the statute of limitations has otherwise expired, even if an official request is sent prior to the expiration of the statutory period. Defendants base this reading on the present tense of the verb "suspend" and on the gerund "running" in the subsection in question. 18 U.S.C. § 3292(a)(1) ("Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall *suspend* the *running* of the statute of limitations for the offense . . . ." (emphasis added)). As noted above, this interpretation has been specifically endorsed by the Second Circuit in *Kozeny*, which held that "the plain language of [section 3292], and the structure and content of the law by which it was enacted, require the government to apply for a suspension of the running of the statute of limitations before the limitations period expires." 541 F.3d at 168. The Second Circuit analyzed the relevant language in some detail:

> [We] conclude that "to suspend" is to cause to stop, at least for a time, something that is otherwise in operation or effect. And a statute of limitations is only in operation or effect if it is running. It is equally obvious, we think, that a statute of limitations cannot be "running" if it has already "run," i.e., if it has expired at the end of the prescribed period. It follows that a district court can "suspend the running of [a] statute of limitations," 18 U.S.C. § 3292(a)(1), only if the limitations period has not yet expired.

*Id.* at 172 (second alteration in original).[5] The Second Circuit understood the statutory language to require that the application for suspension be filed within the statute of limitations: "Because

5

indictment ordinarily precedes the expiration of the statute of limitations period, then, the words 'before return of an indictment' actually imply a time frame before the statute of limitations has run." *Id.* The Second Circuit likewise rejected the argument that the retroactive dating provision in section 3292(b), which specifies that the statute of limitations is tolled retroactively from the date the official request is sent, permitted the government to apply for a section 3292 order later as long as the official request for evidence was sent before the statutory period expired. *Id.* at 173-74. It held that section 3292(b) permitted otherwise-valid suspension orders to be backdated to the date of the official request, but could not make an order valid if the government had not applied for that order before the statutory period expired. *Id.* at 174. Finally, the Second Circuit found that this reading was preferable because it avoided any potential for conflict between section 3292 and the Ex Post Facto Clause of the United States Constitution. *Id.* at 174-176.

The Second Circuit's interpretation of section 3292 in *Kozeny* has been followed by district courts subsequently considering the issue. *See United States v. Brody*, 621 F. Supp. 2d 1196, 1199-1202 (D. Utah 2009); *United States v. Swartzendruber*, No. 3:06-cr-136, 2009 WL 485144, at *7 (D.N.D Feb. 25, 2009).[6] The Second Circuit's reading of the statutory language is persuasive, though not necessarily conclusive.[7] It is also supported by the principle that statutes of limitations ought to be "liberally interpreted in favor of repose." *Toussie v. United States*, 397 U.S. 112, 115 (1970) (quoting *United States v. Habig*, 390 U.S. 222, 227 (1968)). Were this court writing on a blank slate, it might well-adopt *Kozeny*'s approach and dismiss counts 5 through 9 as time-barred. Such is not, however, the case.

II.     The Ninth Circuit's Interpretation of Section 3292

Under the Ninth Circuit's ruling in *United States v. Bischel*, the government can apply for a section 3292 order and the order can issue even after the statute of limitations would otherwise have expired, as long as the government's application is based on an official request that was sent before the statute of limitations expired.

In *Bischel*, the defendant was indicted for mail and wire fraud, conspiring to transport and transporting money taken by fraud, conspiring to defraud the government, and similar offenses. 61

6

F.3d at 1432 & n.2. As in this case, the government had made an official request to a foreign country for evidence during the investigation, and had subsequently applied for and been granted a section 3292 suspension of the statute of limitations. *Id.* at 1432. Bischel moved to dismiss the indictment on the ground that it was returned after the statute of limitations had expired. Specifically, Bischel asserted that the section 3292 order issued by the court could only toll the statute of limitations prospectively from the date on which the order issued, and could not retroactively toll the statute of limitations from the date of the official request. *Id.* The Ninth Circuit found that the district court did not err in holding that the statute of limitations was suspended as of the date of the official request, rather than the date when the order issued. *Id.* at 1434.

    *Bischel* never explicitly states that the government may apply for a section 3292 order after the statute of limitations would otherwise have expired. Defendants argue that *Bischel* was only concerned with how many days the suspension order lasted, and not whether the suspension order could be entered after the statute of limitations would otherwise have expired. They point out that *Bischel* does not specify whether the section 3292 application was made before or after the statutory period would otherwise have expired, and infer from this omission that the court cannot have been concerned with whether the timing of the government's application affected its validity. Therefore, defendants contend that *Bischel* only held that a section 3292 order is backdated to the date of the official request when the government applies for the order during the statutory period. Defendants conclude that the Ninth Circuit has not yet ruled on whether a section 3292 order can be applied for and granted after the statutory period would otherwise have expired.

    However, defendants' interpretation of *Bischel* is unpersuasive. Firstly, the court in *Bischel* specifically stated that "a § 3292 order suspending the running of the statute of limitations speaks as of the date the official request is made, not when the order suspending the statute is entered." *Id.* at 1431-2. Defendants apparently read this language, particularly the present tense of the participle "suspending," as reinforcing their claim that the statute must still be running when the section 3292 order is applied for and issued. However, they ignore the Ninth Circuit's explicit instruction in the same clause that the order "speaks as of the date the official request is made." If the order speaks

7

retroactively as of the date the request is made, then the order is as effective when subsequently issued as it would have been had it issued on the date of the official request.

Secondly, the Ninth Circuit rejected Bischel's argument that the district court's order was invalid because it would revive or extend an already-expired statutory period, stating:

> Bischel contends that the district court erred in holding that the statute of limitations was suspended . . . when the letters rogatory were issued, instead of . . . when the order suspending the statute was entered, on the ground that a § 3292 order cannot revive or extend an expired period of limitations. We disagree.

*Id.* at 1434. The opinion never explicitly states that the section 3292 order in that case was issued after the statute of limitations would otherwise have expired. However, the above-quoted language can hardly be read any other way. It seems to state clearly that in the Ninth Circuit's view, a section 3292 order *can* revive or extend an otherwise-expired period of limitations. Moreover, the next two paragraphs of *Bischel* provide additional evidence that the court had specifically considered the question of whether a section 3292 order could be applied for and entered after the statutory period had expired. First of all, the court states that "the statute plainly contemplates that the starting point for tolling the limitations period is the official request for evidence, not the date the § 3292 motion is made or granted." *Id.* As with the court's indication that the section 3292 order "speaks as of the date the official request is made," this sentence implies that the order is timely as long as the official request is made before the statutory period would otherwise have expired. This sentence is immediately followed by an illuminating quotation from another Ninth Circuit opinion on section 3292: " 'The statute itself specifies the only relevant time the application must be made: 'before return of an indictment.' " *Id.* (quoting *United States v. Miller*, 830 F.2d 1073, 1076 (9th Cir. 1987)).[8] The use of this quotation as support strongly implies that the *Bischel* court was deciding that the section 3292 order could be applied for and issued after the statutory period would otherwise have expired.

This reading is reaffirmed by the Court's discussion of the authorities Bischel cited to make his argument. The Ninth Circuit explained:

> The cases Bischel relies upon are inapposite, as they simply suggest that prosecution under a statute which purports to revive a limitations period after it has run would fall afoul of the Ex Post Facto Clause. *Here, however, it isn't a new statute that is the*

8

*culprit, but its judicial application.* Therefore, the district court did not err in ordering the period of suspension to begin as of the date the letters rogatory were issued.

*Id.* (emphasis added) (footnote and citations omitted). The only inference possible from this juxtaposition is that a section 3292 order—that is, the "judicial application" of the statute—*can* revive a limitations period after it would otherwise have expired, whereas a new law passed by Congress cannot. In other words, the Ninth Circuit was in fact addressing the same set of circumstances faced by this court—where a section 3292 order is entered after the statutory period would otherwise have expired—and found the order valid.

As noted above, several out-of-circuit courts have disagreed with *Bischel*.[9] In doing so, they have not attempted to distinguish *Bischel*'s holding; instead, they have confirmed that *Bischel*'s interpretation of section 3292 permits the government to apply for a section 3292 order after the statute of limitations would otherwise have expired, but then rejected that interpretation. *See, e.g.*, *United States v. Kozeny*, 541 F.3d 166, 170 (2d Cir. 2008); *Brody*, 621 F. Supp. 2d at 1199-1200. *see also United States v. Afshari*, No. CR 01-209(C)-DOC, 2009 WL 1033798 at *3 (C.D. Cal. Apr. 14, 2009) (stating that *Bischel* "allowed the suspension to resurrect the limitations period after the original statute of limitations had expired").

Accordingly, under the Ninth Circuit's interpretation of section 3292, the section 3292 order in this case was valid despite being applied for and issued after the statute of limitations would otherwise have expired.[10]

III.  Defendants' Ex Post Facto and Due Process Arguments

Defendants argue, in the alternative, that even if issuing an order after the statute of limitations would otherwise have expired does not run afoul of section 3292, it violates the Ex Post Facto Clause. As noted above, this contention was specifically rejected by *Bischel*. *See* 61 F.3d at 1434.

Defendants argue that *Bischel* has been superseded on this point by *Stogner v. California*, 539 U.S. 607 (2003). However, their reliance on *Stogner* is misplaced. In that case, the Supreme Court held that a new law enacted after a pre-existing statute of limitations had expired could not

9

permit "resurrection" of otherwise time-barred prosecutions. *Id.* at 609. *Stogner* thus dealt specifically with the circumstance in which a new statute is passed to revive an expired statute of limitations. It excluded from its scope cases in which a new statute is passed extending the statute of limitations before it expires. *Id.* at 616-19.

The Ninth Circuit addressed *Stogner* in *Renderos v. Ryan*, 469 F.3d 788 (9th Cir. 2006). In that case, the court upheld a California statute that authorized prosecution of child sex abuse within one year of a victim's report, even if the report was made after the otherwise-applicable statute of limitations had already expired. *Id.* at 793-94 & n.2. The Ninth Circuit found that it did not violate *Stogner*'s command with respect to the Ex Post Facto Clause for a statute of limitations to be conditionally extended based on events that occurred after the statutory period would otherwise have expired. *Id.* at 795. It found instead that the California statute "seamlessly, albeit conditionally, extends the statute of limitations immediately upon expiration of the other periods. . . . The fact that the extension is conditional is a distinction without a relevant difference." *Id.* It observed that such a conditional extension did not cause the harms that the Ex Post Facto Clause was designed to avoid, since the offender had notice and fair warning that he might still be subject to prosecution even after the otherwise-applicable statute of limitations expired. *Id.* at 795-96. Thus, the Ninth Circuit found that while *Stogner* barred a new law from resurrecting a statute of limitations that had expired when the new law was passed, it did not preclude an already-enacted law from retroactively extending a statute of limitations that would otherwise have expired.

In this case, section 3292 was passed long before the statute of limitations in question expired. Therefore, its subsequent application does not violate *Stogner*. Like the statute in *Renderos*, section 3292 "seamlessly, albeit conditionally" extends the statutory period, conditional on the court issuing a section 3292 order in response to the government's application filed subsequent to the sending of an official request. Thus, under *Renderos*, a section 3292 order does not violate the Ex Post Facto Clause even if it is applied for and issued after the limitations period would otherwise have expired.[11]

10

Defendants similarly argue that it violates the Due Process Clause to issue a section 3292 order after the otherwise-applicable statute of limitations has expired. They contend that "[o]nce a statute of limitations expires, a defendant acquires a vested Due Process right to be free from prosecution." Docket No. 114 (Mot.) at 14. Even assuming, *arguendo*, the truth of this proposition, defendants' logic does them no favors. If, as the court has already held, a section 3292 order can retroactively suspend the statute of limitations even after it would otherwise have expired, then defendants acquired no Due Process right to be free from prosecution because the statute of limitations never fully expired. The "expiration" of the statute of limitations was only conditional, and so could not give rise to any vested Due Process right. *See United States v. Haug*, 21 F.R.D. 22, 25 (N.D. Ohio) ("An accused does not acquire any vested right in a statute of limitations until it has operated to bar the prosecution of the offense with which he has been charged."); *United States v. Titterington*, 354 F. Supp. 2d 778, 788 (W.D. Tenn. 2005) (holding that as "the statute of limitations is tolled/extended prior to the running of the statute of limitations, it logically follows that the Fifth Amendment right to due process has not attached to a defendant when an application is made pursuant to 18 U.S.C. § 3292"). Accordingly, neither the Ex Post Facto Clause nor the Due Process Clause compel the dismissal of counts five through nine.

CONCLUSION

For the foregoing reasons, defendants' motion to dismiss counts 5 through 9 is DENIED.

IT IS SO ORDERED.

Dated: July 6, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

11

## **ENDNOTES**

1. Section 3292(d) defines an official request as "a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country." 18. U.S.C. § 3292(d)

2. Both parties apparently read section 3292(c)(2) to state that when the government makes two separate official requests to separate governments at separate times, each request is independently limited to a six-month period by section 3292(c)(2) if one government to which a request has been made takes final action before the statute of limitations would otherwise expire, even if the other government does not. The statute, however, seems to favor a different interpretation. Section 3292 invokes a six-month limit on "[t]he total of all periods of suspension under this section with respect to an offense" only if "*all foreign authorities*" take final action before the statute of limitations would otherwise expire. This would seem to indicate that if any foreign authority to whom a request has been submitted does not take action before the statute of limitations would otherwise have expired, the six-month limit does not apply to any of the periods of suspension. Here, as is discussed below, Estonia did not take final action before the statute of limitations would otherwise have expired, even though Finland did. Therefore, under a plain reading of the statute, it appears the statute should actually have been tolled with respect to the first request from April 2, 2008 to October 15, 2008, extending the statute of limitations by an additional 13 days. This analysis would mean that the statute of limitations with respect to counts 5 and 8 would have expired on May 18, 2009; counts 6 and 9, on May 26, 2009; and count 7, on July 15, 2009. However, as noted below, the government's second application for suspension was not submitted until July 29, 2009, and so this analysis makes no difference to the outcome.

3. Defendants have assumed, for the purposes of this motion, that the six-month suspension under section 3292 is calculated by calendar months rather than 30-day months. Docket No. 114 (Mot.) at 6 n.5. This is the method of calculation most favorable to the government. *Id.* By this calculation, the first suspension of the statute of limitations (from April 2, 2008 to October 2, 2008) lasted for 184 days. Therefore, the statute of limitations after the first suspension expired 184 days (slightly more than six calendar months) later than it otherwise would have. This difference between 184 days and six calendar months explains why the statutory period ends on a different day of the month after the first suspension.

4. For greater clarity, the relevant dates appear in the following timeline. The key dates have been indicated.

Nov. 3 - Dec. 31, 2003: Offenses charged in counts 5 through 9 committed.

Apr. 2, 2008: United States submits letter rogatory to Finland.

Sept. 22, 2008: United States applies for first section 3292 order; first section 3292 order granted, tolling the statute of limitations for a maximum of six months.

[Nov. 3 - Dec. 31, 2008: Statutes of limitations expire, absent first section 3292 order.]

>>> Apr. 6, 2009: United States submits MLAT request to Estonia.

>>> [May 5 - July 2, 2009: Statutes of limitations expire, if second section 3292 order is not valid.]

>>> July 29, 2009: United States applies for second section 3292 order; second section 3292 order granted.

Aug. 27, 2009: Indictment returned.

12

[Sept. 20 - Nov. 9, 2009: Statutes of limitations expire, if second section 3292 order is valid.]

5. The Second Circuit in *Kozeny* held only that section 3292 required the government's application to be filed before the statutory period expired; it explicitly reserved the question of whether the court's section 3292 order also had to be entered before the statutory period expired. As it stated:

> [T]here could be a scenario in which the government files an application under section 3292 before the statute of limitations has expired but the court does not rule on that application until after the expiration of the limitations period. Because we are not confronted with that scenario in the instant case, we address only whether an application under section 3292 must be filed before the statute of limitations has expired and not whether the district court must also rule on such application before expiration of the limitations period.

541 F.3d at 173 n.8. However, the court's logic would seem to require that the order must also be issued before the statutory period expires, since it is the court's order and not the application which "suspend[s]" the "running" of the statute. *See id.* at 172 ("[A] district court can 'suspend the running of [a] statute of limitations' only if the limitations period has not yet expired." (citation omitted)).

6. Defendants note that an official Department of Justice publication from 1996 instructs Assistant United States Attorneys to be sure to file the section 3292 application before the statute of limitations expires. Since at least some courts have required the application to be filed within the statutory period, it is natural that the Department has erred on the safe side and instructed all of its attorneys to do so. This does not imply that the Department of Justice itself interprets section 3292 to require filing before the statutory period expires.

7. For instance, the present tense of "suspend" and the gerund "running" in section 3292(a) can also be understood, in light of section 3292(b), to speak retroactively as of the day of the official request. If Congress had explicitly included the adverb "retroactively" in section 3292(a) (i.e. "the district court shall *retroactively* suspend the running of the statute of limitations"), it would be clear beyond peradventure that the present tense of "suspend" and the gerund "running" did not preclude the court from issuing a section 3292 order after the statute of limitations would otherwise have expired.

8. In *Miller*, the Ninth Circuit held that the government's application for a section 3292 order need not be made before the evidence requested has been received. 830 F.2d at 1076. In that context, it noted that "[t]he statute makes better sense if it is read . . . to let the government file the application after it has sifted the foreign evidence sought." *Id.* The applications in that case, however, were filed before the statute of limitations would otherwise have expired. *Id.* at 1075. Therefore, the holding in *Miller* is not directly on point. However, the reasoning behind the court's conclusion in that case also supports finding that the government need not apply for a section 3292 order before the statutory period would otherwise have expired.

9. On the other hand, two judges of a Third Circuit panel stated in a footnote that in their view, section 3292 permitted the government to apply for a section 3292 order after the statute of limitations had run, as long as the official request for evidence was made before the statute of limitations had run. *United States v. Hoffecker*, 530 F.3d 137, 163 n.4 (3d Cir. 2008). However, the panel did not decide the case before them on that basis.

10. Because the court finds that *Bischel* dictates the proper interpretation of section 3292 for the purposes of this case, the court has no cause to apply the principles and canons of statutory construction laid out by the parties. The Ninth Circuit's construction of the statute is binding on this court, and this court has no cause to independently reanalyze it.

13

11.  An opposite conclusion was reached in the Central District of California in *Afshari*, 2009 WL 1033798, at *3. There, the court found that *Bischel* had been limited by *Stogner*, and stated that the government could not apply for a suspension of the statute of limitations under section 3292 after the limitations period would otherwise have expired. That opinion does not cite to *Renderos*, and it is not clear how the court reached its conclusion that *Bischel* had been limited by *Stogner*. The complete discussion of this point in *Afshari* reads as follows:

> The Ex Post Facto Clauses of the United States Constitution prohibit the enactment of a statute resurrecting the limitations period after the original statute of limitations has expired. *Stogner v. California*, 539 U.S. 607 (2003). Prior to *Stogner*, the Ninth Circuit held that the suspension of the running of the statute of limitations under 18 U.S.C. § 3292 " 'shall begin on the date on which the official request is made,' " and allowed the suspension to resurrect the limitations period after the original statute of limitations had expired. *United States v. Bischel*, 61 F.3d 1429, 1434 (9th Cir. 1995) (quoting 18 U.S.C. § 3292(b)). As such, *Bischel* construed 18 U.S.C. § 3292 as allowing the resurrection of the limitations period after the original statute of limitations has expired and, thus, runs afoul of the Ex Post Facto Clauses. Therefore, after *Stoegner* [sic], *Bischel* must be limited to only suspend the running of the statute of limitations if it had not yet run at the time of the issuance of the suspension order.

2009 WL 1033798, at *3.

Similarly, the Second Circuit cited the principle of constitutional avoidance in *Kozeny*, in finding that the government could not apply for a section 3292 order after the statute of limitations would otherwise have expired. It noted that the defendant in that case had raised Ex Post Facto and Due Process challenges to the government's actions, and it found those challenges sufficiently weighty to favor interpreting the statute so as to avoid them. *Kozeny*, 541 F.3d at 176 ("Although we do not think that this principle [of constitutional avoidance] alone requires the result we reach, this result allows us to avoid close analysis of what is, at least, a non-frivolous constitutional objection."); *accord United States v. Brody*, 621 F. Supp. 2d 1196, 1202 (D. Utah 2009).